ABRIL *v.* MÉNDEZ.

APPEAL from the District Court of Aguadilla.

No. 71.—Decided May 1, 1907.

EVIDENCE—PRESUMPTION AGAINST PARTY FAILING TO INTRODUCE HIS BEST EVIDENCE.—Where a party has had an opportunity to introduce better evidence than that presented during a trial and fails so to do, it will be presumed that the result of such evidence, if presented, would have been prejudicial to his interests.

ID.—TESTIMONY OF WITNESSES.—Where a witness in testifying refers to entries
    made in a book and makes use of the book solely for the purpose of refreshing
    his memory and testifying with respect to the entries therein contained of his
    own knowledge, such evidence must be considered as oral testimony and will
    be effective as such.

The facts are stated in the opinion.

*Messrs. Acuña and Méndez* for appellant.

*Messrs. Sweet, Rossy & Campillo* for respondent.

MR. CHIEF JUSTICE QUIÑONES delivered the opinion of the court.

J. O. Abril, as the attorney in fact of the Estate of S. Amell, consisting of the latter's widow, Sofia Pretel y Benito, and his minor children, María del Pilar, Salvador Agustín, and María de la Consolación, filed a complaint against Eduar Méndez, a resident of the town of Moca, in the municipal district of Aguadilla, alleging therein that he was the attorney in fact of the Estate of S. Amell, duly appointed by virtue of the substitution of a power of attorney executed in his favor on July 4, 1904, before Juan Mercader, a notary of Aguadilla, by Agustín Amell y Massó, in his turn the general attorney in fact of the said Estate of S. Amell according to an instrument executed before said notary by Sofía Pretel, in her own right and as the mother of her aforementioned minor children; that the defendant is indebted to the Estate of S. Amell in the sum of $449.84, derived from sums received by said defendant for agricultural and other purposes, according to the account current kept in the books of the predecessor in interest, Salvador Amell y Massó, the liquidation of which shows a balance against the defendant for the aforementioned sum, including interest at 12 per cent to November 20, 1906; that said account originated and developed in the following manner:

On April 30, 1903, the defendant had, as the result of a previous liquidation, a balance in his favor of $450.59, and he drew on this balance until it was exhausted, when cash was furnished him at intervals at his request to the amount of $1,783, which sum included a draft on the city of Barcelona

for $500, which was given to said defendant on December 17, 1903. Against these advances the defendant delivered and had placed to his credit 6,234.07 *quintals* of cane at the rate of 14 cents per *quintal,* which, added to the amount of his credit, made a total of $1,358.36, the sum which was credited to him. So that there remains unpaid by the defendant a difference which, with interest at the rate of 12 per cent, is equal to the sum claimed. That such difference, amounting to the sum of $449.84, has not been paid by the defendant, notwithstanding the fact that payment has been amicably demanded; and therefore the plaintiff prays the court that, after compliance with the legal formalities, it render judgment in his favor in his representative capacity for the sum of $449.84, and that any other remedy which may lie in law be also granted; the defendant being further adjudged to pay the costs.

The defendant appeared in the District Court of Aguadilla and demurred to the complaint on the ground that the court did not have jurisdiction, as a sum under $500 was claimed, and in such cases municipal courts have jurisdiction and that the cause could not be instituted in the district court in the way the complaint was entitled; he further made answer to the complaint, denying each and every one of the facts therein alleged with regard to the debt mentioned in the same and as well as that a draft had been drawn under date of December 17, 1903.

On May 28, 1906, the District Court of Aguadilla rendered judgment holding that the law and the facts were partly in favor of the plaintiff and partly in favor of the defendant, and ordered that the Estate of S. Amell recover from Eduardo Méndez the sum of $385.64, and that the latter be relieved from paying $19 the amount of the following items: The value of a lot of lumber delivered to Amell, $4; repair of the Duprey road, crop of 1902-3, $5; repair of the road, crop of 1903-4, $10; and the interest at the rate of 12 per cent claimed by the plaintiff, which interest is payable

only up to the liquidation of April 30, 1903; and it is further ordered that each party pay his own costs.

An appeal having been taken to this Supreme Court by counsel for the defendant, the proper statement of facts containing all the evidence adduced at the trial and approved by the judge of the District Court of Aguadilla, and it has been submitted to the consideration of this court as part of the record of the appeal.

We shall refer briefly to the demurrer filed by the defendant, and to this end we will state that as it appears from said statement of facts that the court overruled the demurrer, because an appeal from a municipal court was involved and not an action originally brought in said district court, although the complaint was entitled in said court for the purposes of the appeal, we are of the opinion that said demurrer was properly overruled, and the decision of the lower court thereon should be affirmed.

From the evidence it is ascertained that the objections of the defendant Eduardo Méndez to the account presented by the plaintiff, the balance of which he seeks to recover in this action, are the following:

"1. An item of $200 which appears under date of June 27, 1903, in the account of the plaintiff as cash delivered to the defendant, which sum the latter denies having received _____ $200. 00
"2. Difference in weight of the deliveries of sugar-cane made by the defendant in the year 1903, arranged with the administrator of the Coloso Plantation 'Julia,' said plantation belonging to the Estate of Amell _____ 17. 00
"3. The value of a lot of lumber delivered to Amell, amounting to $4, which is not credited to the defendant on the account of the plaintiff_____ 4. 00
"4. Repair to the Duprey Road, crop of 1902-3, for the account of the Coloso Plantation according to agreement with Salvador Amell, which also is not credited in the account of the plaintiff_____ 10. 00

"5. The difference in the price of sugar-cane delivered on
the Monserrate Plantation, between 277,400 kilos
at 15 cents and 14 cents which was all that was
credited to him in the account of the plaintiff, the
difference being 1 cent per *quintal* in favor of the
defendant_____  $ 60. 30

"6. The difference in the weight of sugar-cane delivered
to the Coloso Plantation in March, 1904, 60,070
pounds, because having delivered 90,890 pounds,
credit is given on the account of the plaintiff for
20,820 pounds, only, the 60,070 pounds not credited
at the rate of 15 cents, amounting to_____     90. 11

"7  The difference in the price of 1 cent per *quintal* on
the 20,820 pounds which are credited to him as de-
livered to the Coloso Plantation at the rate of 14
cents, instead of 15 cents, which was the price
agreed on_____      2. 08
                                                      _____
                Total_____  $388. 49

These are, as we have stated, the only objections which
the defendant makes to the account of the plaintiff, and we
will examine them separately in order to ascertain on whom
the burden of proof rested in each case and the elements of
proof in relation thereto adduced at the trial. We must call
attention to the fact, nevertheless, that in the total sum of
these objections which has been copied as it appears in the
transcript of the record presented in this appeal, a slight
error has been made because said amount is $383.49, instead
of $388.49, as set forth in said transcript.

The first item objected to—that is to say, that of $200—
is the first item which appears on the debit side of the account
of Eduardo Méndez produced by the party and which corres-
ponds to that which appears in the ledger presented by said
party at the trial. For the purpose of proving this item, the
plaintiff presented at the trial the ledger of S. Amell y
Massó, which contains at folios 147 and 349 the account cur-
rent of Eduardo Méndez, and he further presented the depo-
sition of Guillermo Schomburg, who stated that he had been

an employee of Salvador Amell in the capacity of cashier; that Eduardo Méndez had had business relations with him, and that by reason of a claim against Méndez he had had occasion to make an abstract of the latter's account, which he asserts is the same which has been presented as evidence in this action; that the balance of this account is $421.22, and that it corresponds to that which appears in the ledger, and that when said account was opened Méndez had a balance of $450.59 in his favor; that the first item of $200 which appears in said account, bearing the date of July 27, 1903, was due for a like sum drawn by Eduardo Méndez, to whom it had been delivered by the witness Schomburg who had personally entered it in the cashbook which was in his charge, identifying the entry in the cashbook shown him as made by him; that said item of $200 was transferred to the journal on the same date, July 27, in which he also made the entry personally, and upon the journal being shown him he identified the said entry as made by himself. We therefore have the testimony of witness Schomburg, the former cashier of the Estate of Amell, to the effect that he had personally delivered to the defendant Méndez the sum of $200 on July 27, 1903, in relation with the entries of said item in the journal, the ledger and the cashbook, also identified by the witness as having been made by him personally as proof of the genuineness of the claim of this item on the part of the plaintiff. To rebut this evidence, the defendant presents the testimony of Manuel Jiménez, his bookkeeper, in connection with the books of the former's establishment. The witness states that the $200 which the plaintiff claims he delivered to the defendant on July 27, 1903, do not appear in the latter's books, but he also states that he did not have a direct knowledge of the business of Méndez, and when he credited or debited sums in his books he did so by direction of Méndez and in accordance with the memoranda of deliveries of sugarcane given him. Therefore, apart from the fact that the

delivery of the $200 not appearing in the books of the defendant does not prove that such payment was not made, the last statement of the cashier of Méndez which we have set forth absolutely avoids his testimony with relation to the point under discussion, because it is perfectly clear that if he did not have any direct knowledge of the business of Méndez, and when he credited or debited sums upon the books he did so by his direction, said cashier is not in a position to assert the correctness even of the entries made by him, his statements being in any event absolutely insufficient to destroy the evidence of the plaintiff on this point; furthermore, the defendant himself in his testimony has not sought to cast the slightest shadow of doubt on the testimony of witness Schomburg to the effect that he had delivered the $200 in question to him personally when he had an opportunity to offer stronger evidence than that submitted by him with respect to this point, namely, his own sworn statement denying the truth of the delivery, and, having failed to do so, we must accept, according to the general principles of our law of evidence, that such evidence did not suit him and that had he employed it he would have been prejudiced thereby. Nor can it be successfully alleged that the fact that cashier Schomburg did not ask the defendant for a receipt for the $200, absolutely destroys the value or merit of his testimony, because this circumstance has been explained by him in the sense that Salvador Amell, his employer, did not usually require receipts of the defendant, which statement is corroborated by the fact that the account produced by the plaintiff shows a large number of other deliveries of money made at different times to the defendant for which it does not appear that any receipts were required; nor can it be successfully maintained that according to section 1196 of the Civil Code the entries which appear in the books presented by the plaintiff are admissible as evidence only in so far as they prejudice him, and we say that it cannot be successfully maintained because the said witness testified with respect to the delivery of the

money as a matter of his own knowledge, and he referred to the books only to establish the date such payment was made—that is to say, he made use of the entries to refresh his memory—which is perfectly proper and legal, and thus all the other allegations of the appellant with respect to the probative value of the entries in the books to which we have been referring are answered. We consequently hold that the plaintiff has sufficiently established the payment of the $200 to the defendant, and in this respect the judgment appealed from should not be modified.

The second of the objections of the defendant to the claims of the plaintiff consists in a difference in his favor in the weight of certain sugar-cane delivered by him to the plaintiff during the year 1903, which he states was not credited to him. The burden of the proof on this point is naturally on the defendant and all the evidence he has presented thereon consists of some letters which are of record written to the defendant by Juliá, the former administrator for Salvador Amell. These letters prove nothing with relation to the point under discussion; one of them is conceived in very general terms and, in addition, is not dated, for which reason it cannot be taken into consideration; the other is dated April 17, 1905, and is a reply to a letter from the defendant of the same date, as it states. As a matter of fact, the last letter is productive of results against the defendant. In it Juliá literally says to the latter, among other things, that "The difference in the weight of the sugar-cane must have been credited to his account because the matter had been reported to Salvador and he had agreed   *   *   *"; and, as a matter of fact, if we examine the account presented by the plaintiff, it will be seen that it contains an entry to the credit of the defendant, dated March 9, 1904, for the difference in the total weight of the sugar-cane delivered during the year. Now then, has the defendant proved that the difference in the weight of the sugar-cane spoken of in the letter from Juliá refers to sugar-cane delivered in the year 1903? Not at all;

and under these circumstances it must be assumed that said letter refers to the weight of the sugar-cane delivered in 1904, not only because, as we have said, the letter is dated in April, 1905, and is a reply to a letter from the defendant of the same date, but also because it appears from the account produced by the plaintiff that a liquidation was made of the account of the defendant on April 30, 1903, which showed a balance in favor of the latter of $450.49, which appears as the first item on the credit side of the said account of the plaintiff, and as it does not appear that the plaintiff delivered any sugar-cane to the defendant (*sic*) after said date until January 30, 1904, it is natural and logical to deduce that the difference of which said letter speaks, refers to the difference in the weight of the sugar-cane the deliveries of which were still to be liquidated, or the correct liquidation of which the defendant was seeking, which sugar-cane can be none other, according to the evidence presented at the trial, than that delivered during the year 1904, and which, as we have said, was duly credited to the defendant in March of said year. Consequently the defendant has absolutely failed to established the difference of $17 referred to in the second exception to the account of the plaintiff.

It is unnecessary to consider the third and fourth objections made by the defendant in reference to the value of a lot of lumber delivered to Amell and the repair of a road called Duprey, because they were decided in favor of the defendant by the judge of the district court, and the plaintiff did not except to the said decision.

The exceptions we have indicated by numbers 5 and 7 we must consider together, because they both relate to a difference in the price of sugar-cane delivered which the plaintiff credits at the rate of 14 cents, while the defendant alleges that this was not the price agreed on with Salvador Amell, the price agreed on having been 15 cents per *quintal*. The burden of proof was on the defendant to show this, and in connection therewith he gave his own testimony, corroborated

by the testimony of two other witnesses, and to a certain extent also by that of Schomburg. The defendant testified in this respect to the effect that Salvador Amell had agreed to his request to be paid for the sugar-cane at the rate of 15 cents per *quintal,* the deponent having informed him that he had suffered losses and also because the planters who lived near the railroad were paid by Amell for the transportation of the sugar-cane, while he was not paid as he had carts to transport it. Amell told him to continue planting sugar-cane and that he would be paid 15 cents provided he kept quiet; that this conversation took place in the month of May, 1903, and was witnessed by Simeón Rovira and Antonio Díaz, both of whom also testified, the former stating that he had been present in May, 1902, at a conversation between Méndez and Amell relating to the price of the sugar-cane, during which the latter said to the former: "I shall pay you at the rate of 15 cents, but this is a price I do not pay anyone else." The other witness, Díaz, stated that at that time he had heard a proposition made by Amell to Méndez relating to sugar-cane; that Méndez told him "to continue planting sugar-cane at 13 cents * * *," and that Salvador had told him that he would pay him 14 cents, Méndez replying that he could not do it if he did not pay him at the rate of 15 cents; to which Amell answered: "Keep on planting, as you know that you have always received from me what you wanted." It is true that some slight contradictions are observed in the testimony of these two witnesses, but they relate merely to details of the conversation between Méndez and Amell, but, materially, they agree; and considering their statements in relation with the testimony of the defendant, the deposition of witness Schomburg, who stated that he did not know the price paid by Amell for the sugar-cane, but that he knew that sometimes he made concessions to friends, and that it was not possible to ascertain from the books the price paid for sugar-cane. All these circumstances, added to the fact that the plaintiff has not presented any evidence whatsoever on this point, and to the

fact that the plaintiff had paid the defendant 1 cent more for each *quintal* of sugar-cane delivered, which he had previously paid for at the rate of 13 cents and then increased by 1 cent per *quintal,* thus making the price 14 cents, led the mind of the judge to the certainty or moral conviction that Salvador Amell had accepted the propositions of the defendant Méndez and agreed to furnish the sugar-cane which he might deliver thereafter at the rate of 15 cents per *quintal,* the 'evidence presented by the defendant on this point being consequently quite satisfactory and sufficient to justify a pronouncement in his favor. Therefore, the sum of $62.34, representing the difference of 1 cent per *quintal* in the 6,234.07 *quintals* of sugar-cane which appear in the account of the defendant and which is the subject of the fifth and seventh exceptions, should be credited to the defendant and deducted from the sum adjudged against him.

Let us finally take up the objection indicated in this opinion by number 6, which is the only one left to be considered.

This consists in a difference of 60,070 pounds in the payment of the sugar-cane delivered on the Coloso Plantation in March, 1904, because the defendant alleges that he had delivered 90,890 pounds, while he was credited with 20,820 only, which makes the difference stated. The plaintiff alleges that only 10 carts were delivered to said plantation, while the defendant maintains that he delivered 41 carts. The burden of proof is on the defendant and to this end he confined himself in his testimony simply to stating that he had delivered 41 carts, and that only 10 had been credited to him, without making any other statement in relation to this point, in connection with which witness Galo María, the foreman of Méndez's plantation, who was charged with noting and sending out the carts of sugar-cane therefrom to be delivered to the Coloso Plantation, also testified. He stated that he did not remember the number of carts sent to the Coloso and Monserrate plantations by Eduardo Méndez during the crop of

.1904, but that he kept a notebook in which he entered the number of cartloads delivered, and that it would show the number. The book was introduced in evidence and it shows that 291 cartloads were delivered to the Monserrate Plantation and 41 to the Coloso Plantation, the witness stating that he himself made these entries and that he was certain of their correctness; but, replying to questions of counsel for the plaintiff, he replied that "he made a memorandum of the number of carts leaving the cane fields of Méndez, either because he saw them himself or upon the statement of the driver who left with the sugar-cane to make the delivery"—that is to say, that this witness is not in a position either to state of his own knowledge that the 41 carts which are entered on the books as delivered to the Coloso Plantation were actually 41 carts and not some other number—and as some of these entries were made at the indication of other persons who did not testify at the trial, and as witness Galo María does not indicate, even approximately, the number of carts which he had entered in his books that he saw go out, the evidence presented by the defendant to establish his claims as to the point under discussion is absolutely valueless. And let it not be said that the entries in the said book of Galo María agree perfectly with the books of Méndez in charge of his bookkeeper Jiménez, because while Galo María made his entries on the statements of other persons, so also, as we have seen, neither did Jiménez have a direct knowledge of the business of Méndez, and he made entries under his direction and according to the memoranda of deliveries of sugar-cane which were furnished him; for which reason we have said that the entries and records appearing in the book and books referred to have no probative value. Against this evidence of the defendant the plaintiff produces the testimony of Belén Vázquez and Lino Santiago, both of them weighers of sugar-cane on the plantation Monserrate and Coloso respectively; both of them have their books in which they enter the weight of the sugar-cane delivered to their respective plantations,

and Vázquez identified his and stated that he weighed the
sugar-cane and that all the deliveries made by Méndez ap-
pear in said entries. The other witness, Santiago, testified
that he was and still is the weigher of cane on the Coloso
Plantation; that if he were shown the weekly entries or
memoranda made by the persons interested of the deliveries
to the Coloso Plantation he could identify them, and, as a
matter of fact, he identified as his entries those which had
been introduced as evidence; that from March 13 to 19 Mén-
dez had delivered sugar-cane amounting to 208.2 *quintals;*
that this delivery had been entered in the books, and no other
delivery appears to have been made in the week from March
13 to 19. Upon examining the books of the weighers we
find the same details, with the exception that the book of the
Monserrate Plantation gives the dates of the deliveries, this
not being the case with that of the Coloso Plantation; both
give the number of carts delivered, the source and class and
gross weight, tare and net weight, 10 carts having a net
weight of 20,820 pounds, which are credited on the account
of the plaintiff, appear to have been delivered to the Coloso
Plantation. We do not hestitate to affirm that, in view of the
testimony of witnesses Vázquez and Santiago, the entries ap-
pearing in the books produced by the plaintiff are, in our opin-
ion, more worthy of credit than those appearing in the books
of the defendant, inasmuch as the former are the result of
operations in which the persons making them took a direct
part, while we have seen that the entries in the latter are
hearsay. Furthermore, it is ascertained from the evidence
heard at the trial, from the admission of the defendant him-
self, that he was in the habit of obtaining every week from
the Coloso plantation a memorandum of the weight of the
cartloads of sugar-cane delivered during the same, and if
this be the case we cannot understand why he should not
have protested immediately against so large a difference as
the 60,070 pounds which he alleges were not credited to him;
and had he done so it would have been very easy to correct

the error, because it is not possible to admit that 31 carts of sugar-cane were delivered and weighed without leaving evident proof of their receipt by the plantation. All these considerations lead us to believe that the defendant has failed to prove the differences which constitute the sixth exception to the account, the subject of the plaintiff's claim, and consequently his objections should be dismissed in this respect.

On the grounds set forth in this opinion, we recommend that the judgment appealed from be affirmed, deducting from the sum of $385.64, which the defendant was adjudged to pay, the $62.34 representing the difference of 1 per. cent per *quintal* which the plaintiff is obliged to pay the defendant to make up the 15 cents which was the price agreed on with regard to the 6,234.07 *quintals* of sugar-cane which were delivered by him; and consequently the defendant is adjudged to pay the plaintiff the sum of $323.30, the judgment appealed from being affirmed in so far as it agrees herewith and otherwise reversed, the costs of both instances being understood to be without special taxation.

*Accordingly decided.*

Justices Hernández, Figueras, MacLeary, and Wolf concurred.